IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LARRY C. LEE,

               Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.

CIVIL ACTION FILE NO.

1:05-CV-0736-JFK

## ORDER AND WRITTEN OPINION

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his application for a period of disability and disability insurance benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** for further proceedings.

## I.  Procedural History

Plaintiff Larry C. Lee filed an application for disability insurance benefits on March 29, 2002, alleging that he became disabled on August 3, 2001. [Record ("R.") at 89-91]. After his application was denied initially and on reconsideration, he

requested an administrative hearing, which was held on April 5, 2004, before an Administrative Law Judge ("ALJ").  [R. at 62-85, 318-51].  A decision was issued by the ALJ on May 28, 2004, denying Plaintiff's claims.  [R. at 54-61].  Plaintiff requested review of the ALJ's decision, but the Appeals Council denied his request, making the hearing decision the final decision of the Commissioner.  [R. at 5-50].  On March 17, 2005, Plaintiff filed the above-styled action in this court seeking review of the final decision.  [Doc. 1].

## II.    Facts

Plaintiff Larry C. Lee, fifty-five (55) years old at the date of his hearing, has past work experience as a maintenance mechanic.  [R. at 55, 59, 323].  The ALJ found that Plaintiff has a hearing loss with tinnitus (ringing in the ears), major depression, and anxiety.  [R. at 56].  Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  [R. at 55-56].  The ALJ found that Plaintiff was not able to perform his past relevant work but that he was not disabled because he could perform other jobs that exist in significant numbers in the national economy, including vegetable sorter/gatherer, linen sorter, and textile folder.  [R. at 58-59].

2

The ALJ's decision [R. at 54-61] states the relevant facts of this case as modified herein as follows:

The claimant is a fifty-five (55) year old individual with a high school education. His past work experience includes employment as a maintenance mechanic. He alleges that he became disabled on August 3, 2001, due to tinnitus, an injured eye and depression.

Treatment records from Dr. Wendy Smith indicate that the claimant has had problems with his ears for "many years." (Exhibit 1F). On March 12, 1992, she indicated that he had tinnitus in his left ear and that he had mastoid surgery on both ears. The claimant had decreased hearing but no dizziness or vertigo at that time.

Treatment records from Dr. Kenneth Lazarus reveal that the claimant was involved in an auto accident on November 17, 1999, with loss of consciousness. (Exhibit 3F). The claimant had complaints of neck pain after the accident and was seen by Dr. Lazarus on February 1, 2000, after having an episode of numbness of the right hand, which lasted for twenty (20) minutes. On examination, the claimant had no neurological deficits. Dr. Lazarus ordered an MRI of the hand, which was negative. He indicated that he expected the claimant to make a complete and uneventful recovery from his accident, with no long-term complications. By September 6, 2000, the

3

claimant stated that he had no problems.  He did undergo some electrical stimulation treatments for his tinnitus during November, 2000.  (Exhibit 4F).

An audiological examination of the claimant was done at Buckhead ENT on December 6, 2001.  (Exhibit 5F).  The testing showed moderate low frequency hearing loss and severe mixed high frequency loss.  The claimant's ability to discern speech was good.  An MRI of the brain and auditory canals was done on December 13, 2001, and was termed negative for any abnormality on both counts.  (Exhibit 6F).

The claimant was admitted to Anchor Hospital on February 20, 2002, as an involuntary patient.  (Exhibit 7F).  At admission, he stated that the tinnitus had worsened since his auto accident in 1999, becoming so severe that he could not sleep. He had lost his job the week before and was extremely agitated, with thoughts of suicide.  Admission diagnosis was depression.  He improved rapidly on medications and was discharged on February 23, 2002, with no activity restrictions.  Dr. William Carter recommended that the claimant obtain a machine that made background noise to help him sleep.  The claimant's Global Assessment of Functioning at discharge was sixty (60).

Treatment records from Dr. Carter indicated that the claimant continued to have symptoms of major depression, mild to moderate and without psychotic features.

4

(Exhibits 17F and 22F).   The claimant continued to have problems dealing with his recent job loss.   On August 1, 2002, Dr. Carter indicated that the claimant's depression had improved and that he was able to sleep without his medication.   On November 5, 2002, the claimant reported that he had started some dietary changes and herbal medications recommended in a magazine for people with tinnitus.   When the claimant saw Dr. Carter on October 1, 2003, he indicated that he wanted to change medications from Ativan to Xanax, as recommended in his book on tinnitus.   Dr. Carter agreed to this change.   He noted that the claimant complained that his tinnitus was very uncomfortable for him and that the claimant appeared to be agitated when he discussed that condition.   Otherwise, the claimant was doing well, and he had no problems hearing normal speech.

Dr. Robert Goetzinger performed an ophthalmological consultative examination of the claimant on June 27, 2002.   (Exhibit 10F).   The claimant had immature cataracts in both eyes and retinal arteriosclerosis in both eyes.   Vision was corrected to 20/50 in the right eye and 20/20 in the left.   There were no visual field deficits.

Dr. James Burson examined the claimant on July 10, 2002, for complaints of roaring chronic tinnitus in the right ear.   (Exhibit 14F).   The claimant stated that he was on Lorazepam, Remeron and Zoloft, and that his tinnitus had improved in the right ear.

He also told Dr. Burson that the tinnitus was improved when he had a cold.  He had no

complaints of vertigo.  On examination, Dr. Burson found the claimant to have chronic

unilateral tinnitus; severe depression, controlled with medication; residuals from

mastoid surgery; and blunting of the right tympanic membranes resulting in conductive

hearing loss in the right ear.  On August 7, 2002, Dr. Burson indicated that the claimant

should remain on his psychotropic medications as these seemed to have helped his

tinnitus.

Treatment records from Dr. Ronald Steenerson reveal that the claimant was

treated for tinnitus and hearing loss by that physician.  (Exhibit 18F).  The claimant had

a five (5) percent awareness of tinnitus in testing done on October 3, 2001.  He was

fitted with hearing aids and stated on May 4, 2002, that they were "really helping."

At his hearing, the claimant testified that he has "good days and bad days" with

his tinnitus.  He stated that the condition keeps him from working due to the problems

it causes.  The claimant alleged no physical disability other than his tinnitus.  The

claimant's wife, Vergil Lee testified that the claimant is "a zombie" and "can't

function."  She stated that in 2002, he "prayed to die."  Fontell Gregory, a friend of the

claimant, testified that the claimant had increased problems with his tinnitus after 1999

6

and that he stopped work involuntarily.   The claimant worked as a maintenance mechanic, which was heavy, skilled work.

## III.   Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.   See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited.   The court's function is (1) to determine whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards.   See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984).   Substantial evidence is more than a scintilla, but less than a

7

preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that he is unable to perform his former type of work.  If the claimant satisfies his burden of proving disability with respect to his former type of work the burden shifts to the Commissioner to demonstrate that the claimant, given his age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five (5) step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether a claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether claimant has a severe impairment which significantly limits his ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether claimant can

8

perform his past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5) whether claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.   Findings of the ALJ

The ALJ made the following findings:

1.   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.   The claimant's hearing loss with tinnitus, major depression, and anxiety are considered "severe" based on the requirements in the Regulations, 20 CFR § 404.1520(c).

4.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.   The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

9

6.     The claimant has the following residual functional capacity: work at any exertional level with no exposure to loud noises and no interaction with the general public.  The claimant is restricted to simple, routine, repetitive tasks.

7.     The claimant is unable to perform any of his past relevant work.  (20 CFR § 404.1565).

8.     The claimant is an "individual of advanced age."  (20 CFR § 404.1563).

9.     The claimant has a "high school (or high school equivalent) education."  (20 CFR § 404.1564).

10.    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case.  (20 CFR § 404.1568).

11.    The claimant has the residual functional capacity to perform a significant range of heavy work.  (20 CFR § 404.1567).

12.    Although the claimant's exertional limitations do not allow him to perform the full range of heavy work, using Medical-Vocational Rule 204.00 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a vegetable sorter/gatherer, with 500 jobs in the region and 15,000 in the nation.  He could also work as a linen sorter, with 100 jobs in the region and 2,000 in the nation.  Finally, the claimant might work as a textile folder, with 100 and 1,500 jobs in the region and nation respectively.

10

13.     The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.  (20 CFR § 404.1520(g)).

[R. at 33-34].

## V.     Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Larry Lee had not engaged in any gainful activity since his alleged onset date.  [R. at 55].  At the second step, the ALJ determined that Plaintiff has hearing loss with tinnitus, major depression, and anxiety.  [R. at 56].  Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found at the third step that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 55-56].  The ALJ found at the fourth step of the sequential evaluation that Plaintiff was not able to perform his past relevant work as a maintenance mechanic.  [R. at 58-59].  However, at the fifth step, the ALJ found that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy, such as vegetable sorter/gatherer, linen sorter, and textile folder.  [R. at 59-60].  Accordingly, the ALJ concluded that Plaintiff was not disabled.  [Id.].

11

Plaintiff Lee contends that the ALJ erred and makes a number of arguments in support thereof.  [Doc. 10].  Plaintiff's most persuasive argument involves the ALJ's credibility determinations.  Plaintiff argues that the ALJ did not adequately explain his reasons for discrediting the testimony of Plaintiff and other witnesses who testified at the administrative hearing.  [Doc. 10 at 18-19].  According to Plaintiff, the ALJ's erroneous credibility determination led to a faulty residual functional capacity determination and an incomplete hypothetical question posed to the vocational expert ("VE").  [Id.].  Plaintiff also argues that the ALJ erred by limiting the number of witnesses who were allowed to testify, by not developing a full and complete record, and by using the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, in his decision.  [Doc. 10 at 17-19].

When the ALJ's decision is based upon subjective testimony of the claimant or other witnesses, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).  If testimony is critical in the ALJ's determination, the ALJ must articulate any reasons for discrediting that testimony.  See Viehman v. Schweiker, 679 F.2d 223, 228 (11th Cir. 1982).  In the present case, the testimony of Plaintiff Lee and the other witnesses who testified at the administrative

12

hearing supported his claims of disability.  The VE testified that if Plaintiff's testimony were credited, there would be no jobs that he could perform.  [R. at 350].  Given these facts, the ALJ was under an obligation to make and explain a finding concerning the credibility of Plaintiff's testimony and the testimony of the other witnesses.  See Viehman, 679 F.2d at 228; Scharlow v. Schweiker, 655 F.2d 645 (5th Cir. 1981).

Plaintiff Lee stated that since an automobile accident in November of 1999, he has suffered from tinnitus.  He testified that the roaring noise that he constantly hears sounds "like a semi-truck is going down the road that's inside of my head."  [R. at 326].  According to Plaintiff, because of the loud roaring in his ears, he is unable to concentrate and reacts very slowly.  [R. at 326, 331-32].  Plaintiff testified that he has "good and bad days" but that "a good day ain't exactly as good as you need. . . ." [R. at 328].  He described his bad days by stating the following: "I'm scared to walk outside as far as, you know, I fall and hurt myself.  And I try to stay inside but, you know, it just, it just annoy me, so I don't know how to live."  [R. at 328].  Plaintiff testified that he sometimes thinks about killing himself.  [Id.].  Plaintiff's tinnitus makes him unable to drive, so his son drives him most of the time.  [R. at 331-33].  Plaintiff Lee also stated that the medication he takes has a negative effect on his behavior.  He

AO 72A
(Rev.8/82)

stated, "[Y]ou got to take enough for it to work on you but you get a little bit too much, then it's–then you're so drowsy drunk you can't walk straight."  [R. at 327].

Vergil Lee, Plaintiff's wife, testified that he "was a very hard worker" before the 1999 automobile accident.  [R. at 335-36].  However, since that time, he has not been able to work because "he's unstable, he falls down," and "he cannot concentrate."  [R. at 336].  Mrs. Lee also said that his medication makes him like a "zombie" and "he just can't function like . . . any normal man wants to function."  [R. at 338].  Many times, Mrs. Lee has heard Plaintiff Lee say that he "wanted to die" and that "[h]e prayed to die."  [Id.].  Mrs. Lee described one of Plaintiff's typical day:

> Well, he gets up, he takes his medicine, he lies back in a chair waiting for the medicine to take effect because his ear is so miserable.  The tinnitus is so miserable, it's real hard for him to handle.  And, well, of course he eats a little breakfast when he takes his medicine and sometimes he'll go outside and try to get it off of his mind so it won't run him crazy.  Walk around and things like that.

[R. at 340].  Mrs. Lee also said that she is afraid to leave Plaintiff alone because she believes that he might try to kill himself.  [R. at 341].  She stated that she was told by the staff of his physician to take him to the emergency room if he got suicidal.  [R. at 338].  Mrs. Lee testified that she did, in fact, take him to the hospital one morning for this reason.  She stated, "So I took him to the emergency room and the people at the

14

emergency room admit him into Anchor Hospital and he stayed there for a few days."
[R. at 338].

One of Plaintiff Lee's former co-workers, Fontell Gregory, also testified at the administrative hearing.  [R. at 342-43].  Mr. Gregory stated that before Plaintiff's automobile accident in November of 1999, Plaintiff was "very enthusiastic," a "go getter" and "one of the best mechanics that they had out there.  He would always volunteer to do stuff, if he seen something wrong he would automatically just do it." [R. at 343].  Mr. Gregory testified that after the accident, there was a dramatic change in Plaintiff's behavior.  [R. at 344].  Mr. Gregory stated:

> [H]e would constantly complain about his ear, about his pain in his ear and hearing noises and stuff.  And even to the point where when you go and get into, to work on something that was tore up he would work and, and have to stop momentarily and . . . break down, he would say, you know, some days he would have good days and some days he was having bad days.

[R. at 344].  Mr. Gregory also testified that Plaintiff Lee's condition continued to worsen: "They eventually had to put him on light duty. . . .  And he would come in and he wasn't able to do his mechanic work so they had him doing something else and it got to the point where he couldn't even do that."  [R. at 345].

15

As noted *supra*, the ALJ must make credibility determinations of the claimant and other witnesses, and he must articulate any reasons for discrediting testimony if the testimony is critical to the ALJ's determination.  See <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A lack of an explicit credibility finding becomes ground for remand when credibility is critical to the outcome of the case.") (citing <u>Smallwood v. Schweiker</u>, 681 F.2d 1349, 1352 (11th Cir. 1982)); <u>Viehman</u>, 679 F.2d at 228.  At the administrative hearing, the ALJ asked the VE to make the following assumptions about a hypothetical individual:

> Let us assume initially a hypothetical person of the same age, education and past work of the claimant.  And what if I were to further assume that this individual has no significant exertional impairments but do [sic] to non-exertional impairments has to work in a job that–where he is not exposed to loud noises.  He should not work in a job where he has continuous interaction with the public in terms of using a phone or talking to the public.  Let's further assume . . . that due to his tinnitus and the lack of concentration associated therewith he's confined to jobs in the realm of simple, repetitive tasks. . . .  [L]et's also assume that this individual should avoid exposure to dangerous machinery, automotive equipment and unprotected heights.

[R. at 348-49].  This hypothetical was consistent with the ALJ's residual functional capacity ("RFC") assessment.[1]   In his decision, the ALJ wrote that Plaintiff Lee

---

[1]"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.

16

"retains the following residual functional capacity: work at any exertional level with no exposure to loud noises and no interaction with the general public.  The claimant is restricted to simple, routine, repetitive tasks."  [R. at 58]. The ALJ indicated through the RFC assessment and the hypothetical that he believed that Plaintiff's complaints regarding the tinnitus were greatly exaggerated and that Plaintiff's medication had virtually no effect on him.  In response, the VE testified that there were many jobs that could be performed by the hypothetical individual.  [R. at 349-50].

The ALJ then changed the hypothetical and asked the VE to assume that Plaintiff Lee's testimony is credible and that "he has all the impairments and symptoms associated therewith that he testified to."  [R. at 350].  The ALJ specifically mentioned Plaintiff's alleged difficulty with balance and his testimony that "he has many, many days when which he is non-functional and his wife testified to the same scenario." [Id.].  The VE responded by saying, "No, Your Honor.  There would be no jobs that could be performed for that hypothetical."  [R. at 350].

---

Along with his age, education and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work." Lewis v. Callahan,125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. §§ 404.1545(a), 404.1520(f)).

17

It is clear that the determining factor in this case was whether the ALJ would find the consistent testimony of Plaintiff Lee, Mrs. Lee, and Mr. Gregory to be credible. Thus, the ALJ was required to make credibility determinations with respect to these witnesses and explain the reasoning behind the credibility findings.  He did not fulfill these requirements.

The ALJ wrote that he "finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."[2]  [R. at 60].  However, the ALJ never stated specifically why he was discrediting Plaintiff's testimony, and he offered virtually nothing which even cast doubt on Plaintiff's allegations.  The only findings cited by the ALJ regarding Plaintiff's tinnitus, by far the most significant source of his limitations, were the facts that Plaintiff has no problems with balance or dizziness and that he has good speech recognition with hearing aids. [R. at 58].  No reasons were given for discrediting Plaintiff's allegations that frequently his tinnitus is so severe that it completely eliminates his ability to concentrate and

_____

[2]Despite this finding, the ALJ specifically stated in his decision that his RFC assessment was "[b]ased on . . . the testimony of the claimant."  [R. at 58].  This puzzling statement appears to be completely at odds with his credibility determination.

perform productive tasks.[3]  The ALJ also did not offer any explanation for discrediting

Plaintiff's complaints regarding the effects of his medication.  The court finds that

these omissions amounted to reversible error.

With respect to the testimony of Mrs. Lee and Mr. Gregory, which were entirely

consistent with Plaintiff's allegations, the ALJ did not make any credibility

determination at all.  It appears that the ALJ discredited their testimony, but this is not

at all clear.  An explicit finding of credibility with regard to supporting witnesses is not

required in cases where it is clear that the ALJ discredited the testimony for the same

reasons he discredited the claimant's testimony.  However, in this case, there were no

adequate reasons given by the ALJ for discrediting the claimant's allegations.  Thus,

even if it is assumed that the ALJ discredited the testimony of the claimant's supporting

witnesses, the court is unable to determine whether these credibility determinations were

supported by substantial evidence.  See Viehman, 679 F.2d at 228; Hale v. Bowen, 831

F.2d 1007, 1012 (11th Cir. 1987) ("It is established in this circuit that if the Secretary

---

[3]The ALJ did note that with regard to Plaintiff's depression and anxiety, "there is no evidence of mental health counseling or other treatment since his hospitalization in February, 2002," and "the latest records from Dr. Carter indicate that he has only slight depression."  [R. at 58].  But this finding is not relevant to most of Plaintiff's claims regarding the functional limitations caused by the tinnitus.

fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.").

For all these reasons, the court **ORDERS** that the Commissioner's decision be **REVERSED** and the case be **REMANDED** to the ALJ for further proceedings.  If the ALJ again decides to discredit the testimony of Plaintiff Lee regarding his allegations of limitations, then the ALJ should offer specific and adequate reasons for doing so.  The ALJ should also state whether he is discrediting the testimony of Mrs. Lee and Mr. Gregory, and he should offer some explanation if he finds that their testimony is not credible.

Plaintiff Lee's next argument is that the ALJ erred by limiting the number of witnesses who were allowed to testify.  Plaintiff also contends that the ALJ improperly used the Medical-Vocational Guidelines ("the grids"), in particular, Regulation 204.00, which is limited to heavy work, and that the ALJ did not develop a full and complete record.  [Doc. 10 at 17-19].  The court finds that these arguments are unpersuasive.

At the administrative hearing, Plaintiff brought three (3) witnesses to testify on his behalf.  The ALJ, however, stated, "My limit is two.  Don't give me–I'm not taking testimony from–it's not a parade here."  [R. at 322].  Plaintiff's counsel decided to call Mrs. Lee and Mr. Gregory as his two (2) witnesses.  The other witness who was

20

present but not called to testify was Plaintiff's son.  [R. at 322-23].  Plaintiff contends

that the ALJ erred in limiting the number of witnesses.

The Commissioner cites the Hearings, Appeals and Litigation Law Manual

("HALLEX") in support of her contention that it was within the ALJ's discretion to

limit the number of witnesses in the interests of judicial economy.  [Doc. 10 at 10].

Plaintiff responds by arguing that the HALLEX does not give the ALJ "the authority

to limit the number of witnesses, only the 'subject and scope' and 'how and when they

will testify' at the hearing."  [Doc. 12 at 4].  Although it may not be explicit, the

HALLEX obviously provides that it is the ALJ, and not the claimant or his

representative, who determines how the hearing will be run and who may testify.  For

example, the HALLEX provides, "A claimant or representative is entitled to conduct

such questioning [of witnesses] as may be needed to inquire fully into the matters at

issue.  However, the ALJ determines when they may exercise this right."  HALLEX I-2-

6-60.  Limiting the number of witnesses is certainly within the realm of the ALJ's

authority, and Plaintiff has not presented any evidence showing that the ALJ's decision

on this matter violated due process.

Plaintiff's argument also fails because, in this case, his counsel made it clear that

he had no objection to the ALJ's decision to limit him to two (2) additional witnesses.

21

After the ALJ stated that his "limit is two," Plaintiff's counsel stated, "Okay, right.  I understand.  And, in fact, I'm glad you raised that because I want to ask about that.  I've got the wife and I also have a coworker.  The coworker is going to be very short I would think.  And I've got the son who we could or could not call.  It sounds to me like you don't want to have that many, so I'm fine with the wife and the coworker if that's all right with you."  [R. at 322-23].  Counsel did not object to the ALJ's decision and did not call the son to testify.  Given these facts, the undersigned finds that there was no reversible error in the ALJ's decision to limit Plaintiff's counsel to two (2) witnesses in addition to the claimant.

Plaintiff's final argument is that the ALJ erred when he used the grids, in particular Regulation 204.00, which is limited to heavy work.  [Doc. 10 at 18-19].  Plaintiff contends that there is no evidence in the record to support an RFC which includes heavy work.  [Doc. 10 at 18].  Plaintiff also argues that "the ALJ erred in this case by not developing a full and complete record as to the RFC of Claimant if the ALJ was going to decide this case based on the Grid regulations."  [Id.  at 19].  The court finds these arguments unpersuasive.

First, the ALJ did not err when he found that Plaintiff had the exertional capacity to perform heavy work.  As the Commissioner rightly points out, "Plaintiff produced

no evidence of any severe exertional impairment that would have compromised his ability to perform the physical demands of all levels of work, including heavy work." [Doc. 11 at 8-9]. "Exertional limitations" are defined by the regulations as those that "affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b). "Nonexertional limitations" are those that "affect only your ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1). The regulation then lists some examples of nonexertional limitations:

> (i) You have difficulty functioning because you are nervous, anxious, or depressed; (ii) You have difficulty maintaining attention or concentration; (iii) You have difficulty understanding or remembering detailed instructions; (iv) You have difficulty in seeing or hearing; (v) You have difficulty tolerating some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes; or (vi) You have difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.

20 C.F.R. § 404.1569a(c)(1). Plaintiff's allegations only involved nonexertional limitations, and there is no evidence in the medical record of exertional limitations. Thus, the court concludes that substantial evidence supports the ALJ's finding that Plaintiff had the exertional capacity to perform heavy work.

AO 72A
(Rev.8/82)

Second, contrary to Plaintiff's argument, the ALJ did not decide this case on the basis of the grids. Instead, as the Commissioner notes, the ALJ used the grids as a framework for his decision. [R. at 59-61; Doc. 11 at 5]. The ALJ specifically wrote, "Although the claimant's exertional limitations do not allow him to perform the full range of heavy work, using Medical-Vocational Rule 204.00 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform." [R. at 59, 61]. In addition to using the grids as a framework for his decision, the ALJ also introduced the testimony of a VE to show the existence of jobs that the individual in the hypothetical would be able to perform. As discussed *supra*, it is not clear whether the hypothetical posed to the VE was accurate because it did not include all of the nonexertional limitations alleged by the claimant and because the ALJ did not properly assess whether those allegations were credible. But in spite of the problems with the assumptions made in the hypothetical itself, the ALJ's decision to use the grids as a framework and to subsequently rely on supporting testimony from a VE was proper. As the Eleventh Circuit has held, "If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's

24

testimony, of the existence of jobs in the national economy that the claimant can perform." Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

**VI.     Conclusion**

The court finds that the ALJ failed to apply proper legal standards when he assessed the credibility of the testimony provided by Plaintiff Lee and his supporting witnesses.  The credibility determination of this testimony was critical to the ALJ's decision.   Accordingly, it is **ORDERED** that the decision of the Commissioner denying benefits be **REVERSED** and that this action be **REMANDED** for further proceedings in accordance with the above discussion.  See Melkonyan v. Sullivan, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

**SO ORDERED**, this 17th day of OCTOBER, 2005.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)